UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

Present: The Honorable Philip S. Gutierrez, United States District Judge

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(In Chambers) Order GRANTING Defendants' motions for summary judgment**

Before the Court are (1) Defendant County of Los Angeles and Defendant Los Angeles County Sheriff's Department's (together, "L.A. County Defendants") motion for summary judgment; and (2) Defendant San Bernardino County and Defendant San Bernardino County Sheriff's Department's (together, "S.B. County Defendants") motion for summary judgment. These matters came before the Court for a hearing on June 27, 2011. Having considered the papers submitted in support of and in opposition to these motions, as well as the arguments presented at oral argument, the Court GRANTS the motions.

I.      Introduction

Plaintiff Santiago Ibarra Rivera ("Plaintiff") alleges that on two separate occasions he was improperly arrested and detained on a warrant meant for another person. According to Plaintiff, this was no anomaly; he claims, rather, that law enforcement officials regularly arrest the wrong persons because warrants issued by the Los Angeles County Superior Court do not include unique identifying information that would accurately identify the individuals sought.

On March 15, 2010, Plaintiff filed suit against the County of Los Angeles; the Los Angeles County Sheriff's Department; the County of San Bernardino; and the San Bernardino

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

County Sheriff's Department  (collectively, "Defendants"),[1] asserting claims for injunctive relief and damages under 42 U.S.C § 1983 based on violations of the Fourth and Fourteenth Amendments; violation of the Bane Act, Cal. Civ. Code § 52.1; and common law false imprisonment.  *See Compl.*, Dkt. # 1 (Mar. 15, 2010).  On August 11, 2010, the Court granted the L.A. County Defendants' motion to dismiss Plaintiff's claims with leave to amend.  *See* Dkt. # 34 (Aug. 11, 2010).

Now, pending before the Court are the L.A. County Defendants' and S.B. County Defendants' motions for summary judgment.  *See* Dkt. #52 (Mar. 7, 2011); Dkt. # 57 (Mar. 8, 2011).

II.    Factual Background

A.    Warrant Systems and Procedures

Given the centrality of warrant procedures to this lawsuit, the Court finds it appropriate to begin with a brief overview of California's warrant systems.  There are two databases which law enforcement officials can access to ascertain whether an outstanding warrant exists for a particular individual's arrest.  The California Department of Justice ("CDOJ") operates and maintains a Wanted Persons System ("WPS") containing information about warrants issued by California courts.  *Cook Decl.*, ¶21, Exs. DD-EE.  [Dkt. # 85 (June 8, 2011)].  The Los Angeles Countywide Warrant System ("CWS") is the warrant depository for warrants issued by Los Angeles County courts.[2]  *See Holliday Decl.* ¶ 4 [Dkt. # 53 (Mar. 7, 2011)].

---

[1] Plaintiff also named as defendants the Hon. Charles McCoy, Presiding Judge of the Los Angeles Superior Court ("McCoy"), and John A. Clarke, Executive Officer of the Los Angeles Superior Court ("Clarke").  These individuals, however, were dismissed from this action pursuant to the Court's August 11, 2010 Order.  *See* Dkt. # 34 (Aug. 11, 2010).

[2] The Los Angeles County Sherriff's Department has managed the warrant process through CWS since 1987.  *Holliday Decl.* ¶ 5, [Dkt. # 53 (Mar. 7, 2011)].   In 1985, when the warrant at issue in this litigation was first issued, CWS did not exist and the Los Angeles Police Department was solely responsible for issuing and managing warrants.  *Arevalo Decl.* ¶ 5 [Dkt. # 53 (Mar. 7, 2011)].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

The information provided on warrants generally includes the subject's name, date of birth, address, and physical descriptors. In addition, warrants can also contain unique numerical identifiers, such as social security numbers or driver's licenses, as well as various fingerprint-based identification numbers. Fingerprint-based identifiers are assigned at local, state, and national levels. For instance, the CDOJ assigns a California Identification Index ("CII") number to each set of fingerprints it indexes and stores. *Nursall Decl.,* ¶4 [Dkt. # 57-5 (Mar. 8, 2011)]. A CII number can be used to generate an individual's criminal history and can be linked to that person's full name, aliases, birth date, residential addresses, and unique identifiers such as the person's social security number, driver's license number, and FBI number.[3] *Id.* Los Angeles County agencies, similarly, assign an "L.A. Main" number; San Bernardino agencies assign a "Cal I.D." number. *Cook Supp. Decl.*, Ex. B (*Nursall Depo.* 10:11-16, 10:23-11:9) [Dkt. # 87 (June 8, 2011)]. In addition, law enforcement agencies have the ability to look up an individual's criminal history and identifying information by inputting his name and date of birth into a California Law Enforcement Telecommunication System ("CLETS") terminal. *Walstrom Decl.* ¶ 6 [Dkt. # 57 (Mar. 8, 2011)].

Since 1988, it has been the policy of the County of Los Angeles to update the investigation field of CWS information with an "exoneration" entry when an individual who has been arrested on a CWS warrant is later determined to be the wrong person. *Holliday Decl.* ¶¶ 6,7 [Dkt. # 53 (Mar. 7, 2011)]. An "exoneration" entry typically identifies the individual who was mistakenly arrested on the warrant and explains why the individual was exonerated on the warrant. *Id.* at ¶ 7. For instance, it might note that the individual mistakenly arrested had a different CII number, different fingerprints, or different physical description than the warrant subject. *Id.* When law enforcement personnel are considering arresting and booking an individual on a CWS warrant, they are required to contact CWS to verify that the warrant is still

---

[3] Plaintiff asserts that the CII number is the most reliable identifier, in that it is "unacceptable in terms of law enforcement for one person to have two or more different CII numbers. *Plaintiff's Separate Statement of Genuine Issues of Material Fact in Opp'n to LA Def. Mtn for Summary Judgment ("LA-SGI")* ¶ 3(citing *Nursall Depo.* 16:9-13) [Dkt. # 84 (June 7, 2011)]. L.A. County authorities, however, state that "[t]he mere fact that a warrant contains a CII number that is different from that contained in LASD's computer database for a particular inmate, or that is different from the CII number in an inmate's booking paperwork, does not necessarily mean that an inmate has been mistakenly matched with a warrant." *Becerra Depo.* ¶ 22 [Dkt. # 53 (Mar. 7, 2011)].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

active. *Id.* at ¶ 9. After CWS confirms the warrant is still active, it will provide a Warrant Information Sheet ("WIS") to the arresting/booking officers for the purpose of verifying that the suspect they are considering booking on the warrant is truly the subject of the warrant. The WIS includes all CWS data, including any information about an exoneration, in the investigation field. *Id.* ¶ 10.

When an arrestee is booked in San Bernardino County, a Live Scan is conducted to obtain the arrestee's fingerprints, which are then recorded and transmitted to the CDOJ. *Nursall Decl.* ¶ 3 [Dkt. # 57 (Mar. 8, 2011)]. If fingerprints are already on file, the corresponding identification numbers and criminal history will then be transmitted back to the San Bernardino County Sheriff's Department. *Id.* ¶ 4. The agency then compares the Live Scan report to the information provided by the arrestee, and places the Live Scan Report in the arrestee's booking jacket. *Id.* If there is a discrepancy between the CII number for the arrestee and the CII number that appears on the face of the warrant for which the arrestee is detained, the officer is instructed to contact the CAL-ID fingerprint examiners and physically examine the prints to determine whether the arrestee is the true subject of the warrant. *Id.* ¶¶ 5-6.

B.   Plaintiff's Arrests

1.   *1989 Incident*

On July 12, 1985, a Los Angeles Superior Court issued an arrest warrant for apprehension of an individual named Santiago Rivera[4] on charges of felony manslaughter (violation of Cal. Penal Code §192.3(c)), and violations of Cal. Vehicle Code §§ 23153 (a) and 23153 (b). *See LA Def. Request for Judicial Notice ("RJN")*, Ex. 1 [Dkt. # 54-1 (Mar. 7, 2011)]; *Arevalo Decl.* ¶ 4 [Dkt. # 53 (Mar. 7, 2011)]. The criminal complaint associated with this warrant was assigned number A091945. *RJN,* Ex. 2.

Approximately four years later, on June 18, 1989, Montclair police arrested Plaintiff on this warrant. *FAC* ¶ 28; *see also Beccera Decl.,* Ex. F (*Rivera Depo.* 8:2-12:25) [Dkt. # 53 (Mar. 7, 2011)]. Plaintiff was initially booked in the San Bernardino County jail before being transferred to the custody of the Los Angeles County Sheriffs Department. *Id.* 25:6-28:24; *RJN,*

---

[4] The suspect's middle name, Sausedo, was not identified on the warrant until April 9, 2009, when Plaintiff was released from custody for the second time. *See RJN,* Ex. 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

Ex. 1.  He was released approximately nine days later, on June 27, 1989, after a fingerprint comparison revealed that he was not the true subject of the warrant.  *Cook Decl.*, Ex. E [Dkt. # 85 (June 8, 2011)].  Upon being released from custody, Plaintiff was issued a judicial clearance form, which he could present to the police in the event he was ever mistakenly arrested on the warrant again.  *Rivera Depo.* at 66:10-25; *RJN*, Ex. 3.  On July 6, 1989, the warrant was re-issued and inputted into the court's Trial Court Information System, which was subsequently transferred electronically into CWS.  *Arevalo Decl.* ¶ 7.  The re-issued warrant allegedly did not include any information indicating that Plaintiff had been wrongfully arrested and subsequently cleared of the warrant.  *Opp'n* 4:2-9; *see also S.B. Mot.*, Ex. B at 60 (*Warrant Information Sheet*) [Dkt. # 57 (Mar. 8, 2011)].

2.     *2009 Incident*

On the morning of March 7, 2009, Plaintiff was riding in a car that was stopped by San Bernardino deputies due to a missing license plate.  *Beaton Decl.,* ¶ 2 [Dkt. # 57-2 (Mar. 8, 2011)]; *Hartleben Decl.,* ¶2 [Dkt. # 57-3 (Mar. 8, 2011)].  The deputies asked Plaintiff for a copy of his identification and proceeded to run a record check via WPS to ascertain whether Plaintiff had any outstanding warrants.  *Beaton Decl.*, ¶ 4.  The records check revealed that an individual named Santiago Rivera, with the same exact date of birth, had an active outstanding felony warrant out of Los Angeles County for violations of Cal. Penal Code § 192.3(c) and Cal. Vehicle Code §§ 23153 (a) and 23153 (b).  *Id.*  Deputy Hartleben then spoke with Plaintiff, who protested that he was not the warrant's subject.  *Hartleben Decl.*, ¶ 4.  Plaintiff told the officers that he had previously been arrested and jailed on the warrant in 1989, and was issued paperwork by a court indicating he had been cleared of the charges.  *Id.* ¶ 5; *see also Beccera Decl.*, Ex. F (*Rivera Depo.* 85:11-13) [Dkt. # 53 (Mar. 7, 2011)].  When Hartleben asked to see the paperwork, however, Plaintiff replied that he could not locate it.

The deputies contacted then dispatch to confirm that the warrant was active and obtain the physical description/descriptors on the warrant for purposes of comparison.  *Beaton Decl.,* ¶ 5; *Hartleben Decl.,* ¶ 4.  Dispatch informed the deputies that Los Angeles County Warrant No. CCA09194501 was issued for a person named Santiago Rivera on July 6, 1989, and that the warrant's subject was described as a male Hispanic with brown hair and brown eyes who was a height of five feet five inches and weighed 180 pounds.  *Id.*  The warrant provided no unique physical identifiers, such as scars or tattoos, nor any numerical identifiers, such as a social security number, driver's license number or CII/FBI numbers.  *Id.*  Plaintiff's driver's license

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

indicated that he was a height of five feet six inches and weighed 170 pounds. *Id.*; *see also Cook Decl., Ex. B (Rivera Depo* 83:17-25) [Dkt. # 85 (June 8, 2011)]. The deputies did not observe any tattoos or scars. *Beaton Decl.,* ¶ 5; *Hartleben Decl.,* ¶ 4.

Deputy Beaton then arrested Plaintiff and transported him to the West Valley Detention Center ("WVDC") in San Bernardino, where he was booked on the warrant. *Beaton Decl.* ¶ 7. By the time Rivera arrived at WVDC, the warrant abstract for Warrant No.CCA09194501 had already been transmitted to the jail via teletype from Los Angeles County. *Walstrom Decl.* ¶ 11. A Live Scan test was conducted to obtain Plaintiff's fingerprints, *see S.B. Mot.,* Ex. A (*Rivera Depo.* 92:9-11) [Dkt # 57 (Mar. 8, 2011)], and a booking jacket was created. *S.B. Mot.,* Ex. B [Dkt # 57 (Mar. 8, 2011)]; *Walstrom Decl.* ¶ 10. Plaintiff's fingerprints were scanned and sent to CAL-ID, the CDOJ, and the FBI via Live Scan. *Nursall Decl.* ¶ 4. The morning of March 9, 2009, San Bernardino officials transferred custody of Plaintiff to Los Angeles Sheriff's Department. *Id.*; *see also Becarra Decl.*, Ex. D (*Plaintiff's Inmate Total Movement History*) [Dkt. # 53 (Mar. 7, 2011)].

Plaintiff arrived at the Los Angeles County jail at 12:22 p.m. on March 9, 2009. *Becerra Decl.* at ¶¶ 23, 28; *LA Def. SUF* ¶ 31; *LA SGI* ¶ 31. At 8:30 a.m. the following morning, he was brought to court for a hearing, at which he was represented by a public defender. *RJN*, Ex. 1. Though he purportedly complained to the public defender that he was not the subject of the warrant, Plaintiff did not bring this objection to the attention of the Superior Court during this hearing. *LA Def. SUF* ¶ 40; *RJN*, Ex.1; *LA PMF* ¶ 16. Rather, during the March 10 hearing, Plaintiff entered a plea of not guilty and was remanded back into custody until his next court hearing on March 24. *Id.; see also Ex. G.*

On March 24, 2009, Plaintiff appeared in court again, this time voicing his objection that he was not the wanted man. *RJN*, Ex. 1; Ex. H. The court advised Plaintiff that it was unable to conclusively ascertain at that time whether Plaintiff was, in fact, the warrant's true subject because it did not have the correct file and neither Plaintiff's public defender nor the deputy district attorney had provided copies of the true warrant suspect's fingerprints for purposes of comparison. *RJN*, Ex. 1; Ex. H at 1:21-2:2, 2:27-3:21,4:8-22. Accordingly, the court set another hearing date of April 7, 2009 and remanded Plaintiff back into custody. *RJN*, Exhibit 1.

Plaintiff appeared in court again on April 7, 2009. *Id.* The court informed him that it still had not located the case file, and it still did not have access to the fingerprints of the true

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|----------|------------------------|------|--------------|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

warrant subject to compare with Plaintiff's. *Id.,* Ex. H at 7:21-8:13. It further advised Plaintiff that it could not release him on recognizance due to the seriousness of the felony manslaughter charge. *Id.,* Ex. H 2:12-14:1. He was brought back to court a final time on April 9, 2009, after the file had been located. *RJN,* Ex. 1; Ex. H at 15:21-18:11. After his fingerprints were compared to those of the warrant suspect, it was determined that Plaintiff was not the individual named on the warrant. *Id.* Plaintiff was then released from custody. The court issued Plaintiff a new judicial clearance form, and updated the warrant information to include the middle name of the true warrant suspect. *Id.*


III.    Legal Standard

        Federal Rule of Civil Procedure 56(c) establishes that summary judgment is proper only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, and "may not rest upon mere allegations or denials of his pleading." *See id.* at 248, 257 (citations omitted) .

        A non-moving party who bears the burden of proving at trial an element essential to its case must sufficiently establish a genuine dispute of fact with respect to that element or face summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Such an issue of fact is a genuine and material issue if it cannot be reasonably resolved in favor of either party and may affect the outcome of the suit. *See Anderson,* 477 U.S. at 248, 250-51.

        If the moving party seeks summary judgment on a claim or defense for which it bears the burden of proof at trial, the moving party must use affirmative, admissible evidence. Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue. *See* Fed. R. Civ. P. 56(e).


IV.    Discussion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|----------|----------------------|------|--------------|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

　　　Based on the facts set forth above, Plaintiff filed this lawsuit against L.A. County and S.B. County, asserting claims under Section 1983 for violations of his Fourth and Fourteenth Amendment rights, a claim for violation of the Bane Act, and common-law false imprisonment claims.  Both sets of municipal defendants now seek summary judgment with respect to all of Plaintiff's claims.

　　　A.　　Section 1983 Claims Against L.A. and S.B. County Defendants

　　　Municipalities may be held liable under Section 1983 only where a constitutional violation results from the municipality's official policies or customs.  *See Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978).  Such a policy may be either "explicitly adopted" or "tacitly authorized," *Gibson v. United States,* 781 F.2d 1334, 1337 (9th Cir.1986) (citing *Monell,* 436 U.S. at 690-91, 98 S.Ct. 2018), so long as "the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).  Liability under *Monell* may also attach where there is evidence of a "widespread practice that ... is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Gillette v. Delmore,* 979 F.2d 1342, 1348–49 (9th Cir.1992) (internal quotations omitted).  However, an entity will only be liable under Section 1983 where its policies or customs evince a "deliberate indifference" to the constitutional right and are a "moving force behind the constitutional violation." *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 960 (9th Cir. 2010) (quoting *Levine v. City of Alameda,* 525 F.3d 903, 907 (9th Cir. 2008)).  A policy or custom is considered a "moving force" behind a constitutional violation if both causation-in-fact and proximate causation can be established. *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

　　　Accordingly, to succeed on a Section 1983 claim against either the San Bernardino County or Los Angeles County Defendants, Plaintiff must establish that (1) he was "deprived of his constitutional rights by defendants and their employees acting under color of state law"; (2) that the defendants have customs or policies which "amount[ ] to deliberate indifference" to their constitutional rights; and (3) that these policies are the "moving force behind the constitutional violation[s]." *Lee v. City of Los Angeles,* 250 F.3d 668, 681–82 (9th Cir. 2001) (internal quotations and alterations omitted).  In proceeding, the Court will address each element in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |


 1. *Deprivation of Constitutional Rights*

As indicated above, to survive Defendants' motions for summary judgment, Plaintiff must present a genuine issue of fact showing that Defendants deprived him of his constitutional rights. Here, he alleges that both municipalities violated his Fourth and Fourteenth Amendment rights. Defendants argue that Plaintiff has not suffered any such constitutional deprivation. After outlining the legal frameworks that govern each claim, the Court will separately analyze Plaintiff's Fourth and Fourteenth Amendment claims against both L.A. County and S.B. County Defendants.


 a. Fourth Amendment Claims

Plaintiff alleges that his Fourth Amendment rights were violated by at least two distinct incidents involving employees of both municipal defendants. The first purported violation occurred following Plaintiff's June 1989 arrest on the warrant, when L.A. County personnel re-issued the warrant without recording in the warrant databases that Plaintiff had been cleared on the warrant and without including any unique identifying information as would indicate that Plaintiff was not the correct subject. Second, Plaintiff asserts that Defendants violated his Fourth Amendment rights in 2009, by arresting and incarcerating him without probable cause.[5] Both sets of defendants have moved for summary judgment on Plaintiff's Fourth Amendment claims.


 i. *Applicable Law*

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

---

[5] Although Plaintiff charges both L.A. and S.B. Defendants with this violation, as explained further *infra,* this claim is only applicable against the arresting agency, here, the S.B. County Defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

U.S. Const. Amend. IV. In this case, two discrete Fourth Amendment issues are implicated by Plaintiff's allegations: first, whether the warrant on which Plaintiff was arrested was constitutionally infirm for lack of particularity, *see FAC* ¶¶ 21A-B; and second, whether he was arrested without probable cause in derogation of his Fourth Amendment rights. *See FAC* ¶ 21D.

An arrest pursuant to a valid warrant is ordinarily consistent with the Fourth Amendment. *Baker v. McCollan,* 443 U.S. 137, 143, 99 S.Ct. 2689, 2694, 61 L. Ed. 2d 433 (1979). To be valid, a warrant "must particularly describe[]… the persons… to be seized." U.S. Const. Amend. IV; *see also Wong Sun v. United States,* 371 U.S. 471, 481 n. 9, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963) ("particularity" requirement "applies both to search and arrest warrants."). As a general rule, "an arrest warrant that correctly names the person to be arrested . . . satisfies the fourth amendment's particularity requirement, and no other description of the arrestee need be included in the warrant." *See Powe v. City of Chicago*, 664 F.2d 639, 645 (7th Cir. 1981) (internal citations omitted). In contrast, an arrest warrant that incorrectly names a person will not satisfy particularity requirement, unless it includes some other description that is sufficient to identify the subject of the warrant. *See Rogan v. City of Los Angeles*, 668 F. Supp. 1384, 1391 (C.D. Cal. 1987).

Second, as the language of the Fourth Amendment indicates, an arrest based on probable cause does not run afoul of the Fourth Amendment, particularly where effected with a valid warrant. *See Virginia v. Moore*, 553 U.S. 164, 177, 128 S. Ct. 1598, 1607, 170 L. Ed. 2d 559 (2008) ("We have equated a lawful arrest with an arrest based on probable cause…"); *accord Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir. 1994) (the Fourth Amendment generally requires that an arrest be based on probable cause, regardless of whether it is effected with a warrant). Under the Supreme Court's decision in *Hill v. California*, mistaken identity can provide a basis for probable cause. *Hill v. California,* 401 U.S. 797, 802-03, 91 S. Ct. 1106, 28 L. Ed. 2d 484 (1971) (holding that police officers had probable cause to arrest an individual with a sufficiently similar appearance to the description in a warrant). That is, if officers mistakenly arrest the wrong person, the arrest is nonetheless constitutionally valid so long as the officers have probable cause to arrest the person sought and the arresting officer reasonably believed that the arrestee was that person. *Id; see also Gant v. County of Los Angeles*, --- F. Supp. 2d ---, 2011 WL 1585133, at *5 (C.D. Cal. Apr. 26, 2011). The Ninth Circuit has also explained that once probable cause to arrest is established, a law enforcement officer is not required by the Constitution to investigate independently every claim of innocence, regardless of whether the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|----------|----------------------|------|--------------|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

claim is based on mistaken identity or a defense such as lack of requisite intent. *See Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003).

ii. <em>Los Angeles County Defendants</em>

In claiming that L.A. County officials acted unreasonably by failing to update CWS to include Plaintiff's (or the true warrant subject's) CII number or any other unique identifier, Plaintiff effectively alleges that L.A. County violated the Fourth Amendment's requirement that a warrant "particularly describe the person to be seized." *Opp'n* 20:12-13*; see also FAC* ¶ 21A. The L.A. County Defendants now move for summary judgment on this claim, arguing (1) that the information on the warrant suffices to satisfy the particularity standard of the Fourth Amendment; and (2) that no authority supports Plaintiff's position that warrant was constitutionally defective because it did not include the warrant subject's CII number or provide any indicia of Plaintiff's exoneration. *Mot.* 11:18-14:2.

The Court agrees with L.A. County on both counts.[6]  First, because the warrant under which Plaintiff was arrested included the subject's name, date of birth, and a physical description including height, weight, hair color, eye color, and race, it was therefore sufficiently particular to satisfy the requirements of the Fourth Amendment. *See White v. Olig*, 56 F. 3d 817, 819 (7th Cir. 1995) ("In general, an arrest warrant that correctly names the person to be arrested is considered constitutionally sufficient and need not contain any additional identifying information.") (citing *West v. Cabell,* 153 U.S. 78, 14 S. Ct. 752, 38 L. Ed. 643 (1894)). Moreover, as L.A. County correctly points out, Plaintiff offered no authority to support his claim that the more precise CII number was required to satisfy the Fourth Amendment's particularity requirement. *Id.*

Plaintiff's opposing papers, rather, focus on his argument that L.A. County Defendants – who played no part in Plaintiff's 2009 arrest – violated Plaintiff's Fourth Amendment rights by incarcerating him without probable cause. *See Opp'n* 8:1-9:4.  In support of this claim, Plaintiff relies on two cases, *West v. Cabell*, 153 U.S. 78, 14 S.Ct. 752, 38 L.Ed. 643 (1894), and *Pierce v. Multnomah County*, 76 F.3d 1032 (9th Cir. 1996).  *Opp'n* 9:15-16.  Neither case, however,

---

[6] This should come as little surprise; on August 11, 2010, the Court granted the L.A. County Defendant's motion to dismiss Plaintiff's Fourth Amendment claim on this basis. *See* Dkt. # 34 (August 11, 2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

establishes that a non-arresting official (or the entity employing that official) can be liable for an unreasonable arrest under the Fourth Amendment. As Judge Feess explained in rejecting this argument, "*West v. Cabell* establishes only that arresting someone on a warrant that describes someone else violates the Fourth Amendment…*Pierce v. Multnomah County, Oregon* establishes only that the Fourth Amendment applies to evaluate the conditions of custody of an "arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest." *Gant*, 2011 WL 1585133 at *11 (internal citations omitted).[7] Further, not only does Plaintiff fail to point to any authority establishing that a non-arresting defendant can be liable for an unlawful arrest under the Fourth Amendment, courts in this Circuit have consistently analyzed claims arising from an incarceration based on mistaken identity under the Due Process Clause to the Fourteenth Amendment. *See, e.g., Baker,* 443 U.S. at 141, 99 S.Ct. at 2693; *Fairley,* 281 F. 3d at 915-18; *Alvarado v. Bratton*, No. CV 06-7812 PA, 2009 WL 3963840, at *5 (C.D. Cal., Nov. 16, 2009).

In sum, because Plaintiff has failed to raise a triable issue of fact as to whether the L.A. County Defendants violated Plaintiff's Fourth Amendment rights by failing to include additional information on the warrant when it was re-issued, the Court **GRANTS** L.A. County Defendants' motion for summary judgment on Plaintiff's Fourth Amendment claim.

        iii.    *San Bernardino County Defendants*

Plaintiff's Fourth Amendment Section 1983 claim against S.B. County is based on allegations that the S.B. deputies arrested and incarcerated him without probable cause. *FAC* ¶ 52. In ruling on the S.B. County Defendants' motion for summary judgment on this claim, the Court must therefore determine whether, at the time of arrest, the S.B. County deputies reasonably believed that Plaintiff was the person sought in the warrant.[8] *See Gant v. County of*

---

[7] Suggesting that Judge Feess' "non-biding analysis [in *Gant*] is in error[,]" Plaintiff maintains that the Fourth Amendment applies, since his arrest and subsequent incarcerations in both the San Bernardino jail and the LA County jail were "all seizures." *See Opp'n* 9 n.10. The Court, however, is not persuaded. As noted above, constitutional violations arising out of an arrestee's incarceration are cognizable under the Due Process Clause of the Fourteenth Amendment, notwithstanding that the incarceration can be classified as a "seizure."

[8] This analysis does not require a threshold finding that the warrant was constitutionally valid. *See Brinson v. Syas*, 735 F. Supp. 2d 844, 854 (N.D. Ill. 2010) (explaining that "whether the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

*Los Angeles*, No. CV 08–5756 GAF (PJWx), 2011 WL 1585133, at *8 (C.D. Cal., Apr. 26, 2011); *see also Blackwell v. Barton,* 34 F.3d 298, 303 (5th Cir. 1994).

S.B. County contends that summary judgment is appropriate because the arrest of Plaintiff under warrant No. CCA09194501 was reasonable as a matter of law. In support of this argument, they point out that Plaintiff and the true subject of the warrant (Santiago Sausedo Rivera) "(1) had the same first and last name (and the warrant did not include a middle name); (2) had the exact same date of birth; (3) were both Hispanic males with brown hair and brown eyes; and (4) the Plaintiff's height (5'6") and weight (170 lbs) varied from the warrant subject's by only one inch (5'5") and ten pounds (180 lbs)." *S.B. Mot.* 15:10-18. They further attest that the warrant contained no unique identifiers (such as a driver's license number, CII and/or FBI number, social security number) that would have informed the officers that Plaintiff was not the warrant's true subject. *Id.* 15:19-22; *see also Beaton Decl.* ¶ 5; *Hartleben Decl.* ¶4. Similarly, S.B. County argues that the deputies' observation that Plaintiff lacked any tattoos, scars, or other obvious physical identifiers was consistent with the warrant, which provided no information about any tattoos, scars, or other descriptors that could identify the subject. *Id.* Further, it also points out that Plaintiff was unable to produce the judicial clearance form as proof of his exoneration.[9] *Id.* ¶ 5. Plaintiff, in response, counters that the arrest was objectively unreasonable[10] because the S.B. County Defendants knew that: (1) Plaintiff's height, weight, and

---

Officers reasonably believed that they were arresting the right person" presents a question of fact, "*regardless* of whether a valid arrest warrant exists") (emphasis added). Accordingly, the Court's previous holding that the warrant satisfied the Fourth Amendment's particularity requirement has no bearing on the present inquiry.

[9] According to Deputy Hartleben, Plaintiff's indication that he knew the warrant was for felony manslaughter "tended to confirm [Hartleben's] belief that [Planitiff] was the subject of the warrant." *Hartleben Decl.* ¶ 6. The Court notes that this statement, which clearly indicates Plaintiff's familiarity with the warrant, could also reasonably be interpreted to corroborate Plaintiff's claim that he had previously been wrongfully arrested (and subsequently exonerated) on the warrant.

[10] By arguing that Plaintiff's arrest and incarceration were unreasonable as a matter of law, Plaintiff effectively presents a cross-motion for summary adjudication, rather than an opposition to Defendants' motion(s). However, were the Court to treat his opposing brief as a cross-motion, Defendants would be denied a fair and full opportunity to respond. *See Sched. Ord.* ¶ 5(c) (affording 25 pages to opposing briefs; 12 pages to reply briefs). Accordingly, the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

residential address (in San Bernardino County) did not match that of the warrant subject (which stated that the subject lived in Los Angeles County); and (2) "[Plaintff] complained repeatedly and consistently to both agencies that he was not the warrant's subject, that he had been exonerated on this very warrant 20 years earlier." *Opp'n* 10:9-15; *see also Cook Supp. Decl.*, Ex. F (*Rivera Depo*) 87:21-25, 89:17-90:18 [Dkt. #87 (June 8, 2011)].

In evaluating whether an officer reasonably believed that the arrestee was the same person named in the warrant, courts have predominantly focused on height and weight discrepancies, inquiring whether a disparity is significant enough to create a triable issue of fact for a jury. For instance, in *Martinez v. City of New York*, 340 Fed. Appx. 700, 2009 WL 2222925 (2d Cir. 2009), the Second Circuit concluded that the arresting officers had probable cause to arrest and detain plaintiff where, at the time of the arrest, the officers knew of an outstanding warrant for an individual with the same name and birth date as plaintiff. *Id.* at 701-702. Although the physical description in the outstanding warrant differed in skin tone, height, and weight from plaintiff's physical appearance, the discrepancies were, as the court found, "too minor to preclude a finding of probable cause." *Id.* (internal citation and quotations omitted). Thus, concluding that "[a] difference of "slightly more than two inches in height and twenty pounds in weight, as well as different skin tone" when the two individuals had the same name and birth date" was not enough to save Plaintiff's claim from summary judgment, it granted the defendants' motion. *Id.; accord Brass v. County of Los Angeles*, 10 Fed. Appx. 412, 414, 2001 WL 275076, at *1 (9th Cir. 2001) (warrant subject and arrestee were "the same race and coloring, were within three years of the same age, and were within one inch in height and twenty pounds in weight" which "weigh[ed] in favor of a finding of probable cause to arrest"); *Rodriguez v. U.S.*, 54 F.3d 41, 46 (1st Cir. 1995) ("We agree with the government that these slight [3-inch and 20-pound] discrepancies-minor variations between the plaintiff's physical description and the fifteen-year-old DEA booking form description-could not have undermined the objective reasonableness of the arresting deputies' belief that plaintiff was the person named in the 1975 warrant.").

---

will construe Plaintiff's arguments to mean that triable issues of fact exist on this claim. Arguments which cannot be construed as such, *e.g.,* Plaintiff's contention that the Court should summarily adjudicate his cause of action for injunctive relief in his favor, *see Opp'n* 20:8-21:1, will be disregarded. Plaintiff's counsel is further advised to review Federal Rule of Civil Procedure 56(c).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

Judge Feess reached a different conclusion in *Gant v. County of Los Angeles,* which involved a similar Fourth Amendment-based Section 1983 claim arising from allegations of mistaken identity. *Gant v. County of Los Angeles*, ---F. Supp. 2d ---, 2011 WL 1585133 (C.D. Cal. Apr. 26, 2011). Distinguishing the above-mentioned cases, he noted that a seven-inch height and 120-pound weight discrepancy existed between Mr. Gant and the true subject of the warrant on which he was arrested. In light of such, the court reasoned, whether the defendant officer could have had a reasonable belief that Mr. Gant was the warrant's subject was a factual question properly left to a jury. *Id.* at *8.

Here, Plaintiff's one-inch height and ten-pound weight discrepancies from the true subject of the warrant at issue make this case readily distinguishable from the "drastic" discrepancies noted in *Gant. Id.* at *8. Given the similarities in height, weight, hair color, eye color, and ethnicity, Plaintiff bore at least some physical resemblance to the person named in the warrant. *See United States v. Pinion,* 800 F.2d 976, 979 (9th Cir. 1986) ("An arrestee's physical resemblance to the description of the person to be arrested is a relevant factor in finding a reasonable belief of probable cause to arrest"). In addition, other relevant factors – such as the fact that Plaintiff had the exact same birth date as the warrant suspect, and knew that the warrant was one for felony manslaughter – reasonably corroborated the deputies' impression that Plaintiff was the individual named on the warrant. *See Hartleben Decl.* ¶¶ 4-6.

Plaintiff does not present any evidence that would preclude a finding that probable cause existed as a matter of law. Given that over twenty years had passed between issuance of the warrant and the date of the arrest, neither the minor height and weight discrepancies nor the discrepancy in residences support a reasonable jury finding that the S.B. deputies could not have reasonably believed that Plaintiff was the warrant's subject. Although it is undisputed that Plaintiff protested that he was not the warrant's true subject at the time of arrest, it is similarly undisputed that Plaintiff could not produce the judicial clearance form (which he had been instructed to carry with him at all times) as proof of his 1989 arrest and exoneration on the warrant. Thus, to accept Plaintiff's view, the Court must find that a jury could reasonably conclude that an officer lacks probable cause to arrest a person who has the same name, physical appearance, and birth date as the person on a warrant for felony manslaughter solely because the arrestee claimed, without a shred of proof, that the officers were mistaking him for the wrong guy. This conclusion, however, is neither supported by law nor grounded in common sense.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

Therefore, based on the foregoing, the S.B. County Defendants' motion for summary judgment as to Plaintiff's Fourth Amendment Section 1983 claim is **GRANTED.**

   b. <u>Fourteenth Amendment Claims</u>

Plaintiff also brings Fourteenth Amendment Section 1983 claims against the S.B. County and L.A. County Defendants based on his detention at both S.B. County and L.A. County jails. In general, he claims that Defendants violated his due process rights by not using the information available to them to confirm that he was being wrongly held. Defendants now argue that there is no evidence creating a triable issue of fact with respect to Plaintiff's due process claims and, thus, that the Court should summarily adjudicate the claims as a matter of law.

   i. *Applicable Law*

The Fourteenth Amendment's Due Process Clause protects individuals against deprivations of liberty without due process of law. U.S. Const. Amend. XIV. The law is clear that an individual has a liberty interest in being free from incarceration absent a criminal conviction. *Baker v. McCollan,* 443 U.S. 137, 144, 99 S.Ct. 2689, 2694, 61 L. Ed. 2d 433 (1979); *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) ("Indeed, the paradigmatic liberty interest under the due process clause is freedom from incarceration.").

In circumstances where an individual is mistakenly incarcerated, the Supreme Court has explained that:

> [D]epending on what procedures the State affords defendants
> following arrest and prior to actual trial, mere detention pursuant to a
> valid warrant but in the face of repeated protests of innocence will
> after the lapse of a certain amount of time deprive the accused of
> "liberty ... without due process of law.

*Baker,* 443 U.S. at 145 (holding the plaintiff's due process rights were not violated during a three-day detention based on a warrant meant for someone else given that the warrant was facially valid and three days was not unduly long); *see also Nguyen v. County of Orange*, No. CV 98-5286 NM, 2001 WL 315337, at *3 (C.D. Cal. Mar. 3, 2001) (finding that the plaintiff failed to establish that he was deprived of a constitutional right under *Baker* where he was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

incarcerated fourteen days on a warrant meant for a different person who had a similar name, identical date of birth, and comparable physical description).[11]

The Ninth Circuit has declined to read *Baker* as creating a bright-line rule that detentions shorter than three days do not amount to Fourteenth Amendment violations. *Alvarado v. Bratton*, 299 Fed. Appx. 740, 742, 2008 WL 4833267, at *1 (9th Cir. 2008). Rather, it has explained that a detainee's loss of liberty gives rise to a due process claim under *Baker* at the point when detaining officials know or should know that the detainee is entitled to release. *Lee v. City of Los Angeles,* 250 F.3d 668, 683 (9th Cir. 2001) (internal quotations omitted); *Fairley v. Luman,* 281 F.3d 913, 918 (9th Cir. 2002).

To determine whether the Due Process Clause requires a governmental entity to implement certain procedures for verifying that an arrestee is a warrant's true subject, the Court must apply the three-part established in *Mathews v. Eldridge*, 424 U. S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), and balance: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation and the probable value of additional procedural safeguards; and (3) the governmental interest, including the fiscal and administrative burdens of additional procedures. The procedural due process inquiry is made "case-by-case based on the total circumstances." *California ex rel. Lockyer v. F.E.R.C.,* 329 F.3d 700, 711 (9th Cir. 2003); *cf. Matthews v. Harney County, Or., Sch. Dist. No. 4,* 819 F.2d 889, 894 (9th Cir. 1987) (noting that the due process requirements attaching to a liberty interest may be more rigorous than those attaching to only a property interest).

---

[11] Contrary to L.A. County Defendants' position, neither *Baker* nor its progeny foreclose liability for non-arresting agencies that hold a detainee in custody. *Baker* held that the defendant custodial agency did not violate the plaintiff's due process rights by detaining him pursuant to a facially valid warrant for a period of three days over his protestations of innocence. *Baker*, 443 U.S. at 144, 99 S.Ct. 2689. L.A. County's assertion that, "[u]nder Baker, a custodial agency is under no duty to investigate the arrestee's identity, even where the arrestee complains he is not the person wanted by the warrant, and even where the custodial agency has information in its possession that, if examined, would exonerate the arrestee[,]" *LA Def. Mot.* 4:11-14, thus proves too much. As Judge Feess aptly put it in *Gant,* "no case, at any level has allowed a custodial agency to ignore the possibility that it may have the wrong person in custody." *Gant*, 2011 WL 1585133, at *6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

ii.    *Los Angeles County Defendants*

As previously noted, to succeed on his due process claim against the L.A. County Defendants, Plaintiff must first establish that L.A. County officials deprived him of his Fourteenth Amendment rights by detaining him even though they knew or should have known that he was entitled to release. *See Lee,* 250 F.3d at 683; *Fairley*, 281 F.3d at 918. As an initial matter, the Court notes that Plaintiff presents no evidence showing that any L.A. County official *actually* knew that Plaintiff was not the true subject of the warrant. The question, then, is whether the L.A. County Defendants *should have* known, that is, whether they were constitutionally obligated to go beyond the paperwork, which indicated that Plaintiff's name, exact birth date, and physical description corresponded with the information on the warrant, and independently verify that Plaintiff was, in fact, the subject of the warrant. Here, in the Court's view, the answer is no.

Plaintiff was held under orders of the Superior Court from March 10, 2009, the date of his first hearing, until April 9, 2009, when the Court, having located the true suspect's fingerprints and determined that Plaintiff's prints did not match, released Plaintiff from custody. *RJN,* Ex. 1; *S.B. Mot.,* Ex. A (*Rivera Depo* 44:9-16; 45:3-46:22; 47:9-48:9); Ex. D (*Reporter's Tr.*) [Dkt. # 57 (Mar. 8, 2011)]. During this time period, he did not complain to any employee of the L.A. Sheriff's Department that he was being wrongfully detained on a warrant meant for someone else, let alone indicate that he had been arrested, jailed, and exonerated on this warrant in 1989.[12] *Beccera Decl.*, Ex. F (*Rivera Depo.* 115:19-23) [Dkt. # 53 (Mar. 7, 2011)]. Given that Plaintiff was arrested pursuant to a facially valid warrant supported by probable cause, and held in custody pursuant to a court order while his claim of mistaken identity was investigated, the Court finds, as a matter of law, that the L.A. County Defendants' detention of Plaintiff

---

[12] Plaintiff claims that, from his first court appearance, both his public defender and the prosecutor knew of his complaint that he was not the true subject of the warrant, and were aware of his claim that he had been cleared of the warrant in 1989. *Opp'n* 7:12-8:2. However, his due process claim against the L.A. County Defendants cannot be based on the purported action/inaction of the public defender or prosecutor at the first hearing or any time thereafter. The law is clear that a public defender and prosecutor do not act under color of state law for purposes of liability under Section 1983. *See Polk County v. Dodson*, 454 U.S. 312, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981). Accordingly, Plaintiff cannot succeed in holding L.A. County liable under *Monell* on this basis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

during this time did not violate due process.[13]  This conclusion is grounded in the common-sense principle that "a jailer should not be expected to go behind a court order of commitment to determine whether a person presented for safekeeping has been convicted as a result of some denial of his constitutional rights." *Lumbermens Mut. Cas. Co. v. Rhodes*, 403 F.2d 2, 7 (10th Cir. 1968); *see also Gant v. County of Los Angeles*, No. CV 08-5756 GAF, 2010 WL 679082, at *3 (C.D. Cal., Feb. 25, 2010) ("To require a jailer to choose between disobeying the court order or being haled into court to answer for damages would be 'simply unfair.'") (internal citation omitted).   Other federal appellate courts have similarly declined to hold custodial agencies liable for detaining an individual pursuant to a valid court order.  *See, e.g.*, *Hoffman v. Halden*, 268 F.2d 280, 300 (9th Cir. 1959), *overruled on other grounds, Cohen v. Norris*, 300 F.2d 24 (9th Cir. 1962) ("the failure of a jailor or keeper to release a prisoner held on a warrant or commitment cannot be the basis for a civil rights action regardless . . . of malice, motive or intent. His act is required by law."); *Henry v. Farmer City State Bank*, 808 F. 2d 1228, 1239 (7th Cir. 1986) ("To allow the [plaintiffs] to attack the order collaterally by bringing a § 1983 suit against [the defendant sheriff] for damages would require sheriffs and other court officers who enforce properly entered judgments pursuant to facially valid court orders to act as appellate courts, reviewing the validity of both the enforcement orders and the underlying judgments before proceeding to collect on them. Such a result is obviously untenable."); *Roland v. Phillips*, 19 F.3d 552, 556 (11th Cir. 1994) (holding that "law enforcement personnel, acting in furtherance of their official duties and relying on a facially valid court order, are entitled to absolute quasi-judicial immunity from suit in a section 1983 action"); *Patterson v. Von Riesen*, 999 F.2d 1235, 1240 (8th Cir. 1993) ("Courts have consistently held that officials acting pursuant to a facially valid court order have a quasi-judicial absolute immunity from damages for actions taken to execute that order.").

Plaintiff neither refutes these authorities nor presents any evidence as would compel a different result in this case.  The testimony of LASD personnel featured in Plaintiff's opposing papers, *see Opp'n* 14:6-16:6, misses the point.  Plaintiff's line of questioning, which focuses on whether jail personnel should notify a court if they believe an individual held under court order is not the correct suspect, presupposes the critical question here: whether due process required LASD personnel to independently investigate a detainee's claim of mistaken identity while

---

[13] As the parties may note, the Court's holding is consistent with its prior Order, which granted the L.A. County Defendants' motion to dismiss Plaintiff's Fourteenth Amendment Section 1983 claim on this basis.  *See* Dkt. # 34 (Aug. 11, 2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

holding the detainee pursuant to court order until the court could ascertain whether he should be released. Accordingly, this testimony cannot rescue Plaintiff's claim from summary judgment. The Court therefore holds that Plaintiff cannot maintain a Section 1983 claim against the L.A. County Defendants for violating his due process by detaining him from March 10, 2009 to April 9, 2009 pursuant to orders of the Los Angeles Superior Court.[14]

The inquiry does not end here, however. Plaintiff also asserts two additional theories of due process liability against L.A. County based on conduct that occurred before he was remanded into L.A. County custody by order of the Superior Court. First, he claims that L.A. County deprived him of due process in 1989 by failing to update the CWS investigation field of CWS to reflect that Plaintiff had been cleared of the warrant and/or to identify the CII number of the true warrant subject. *Opp'n* 4:2-10. Second, he asserts that his due process rights were violated by L.A. County officials' failure to "easily and quickly rule[] out [Plaintiff] as the warrant's intended subject[,]" at the time he entered L.A. County custody in 2009. *Opp'n* 13:14-16. The Court addresses in turn each of these additional procedures that Plaintiff urges were required.

A.      Failure to Update CWS Information

It is undisputed that the Warrant Information Sheet ("WIS") generated from CWS in response to Plaintiff's March 7, 2009 arrest does not indicate that Plaintiff was exonerated on the warrant in case number A091945 in June 1989. *S.B. Mot.*, Ex. B at 60 (*WIS*) [Dkt. # 57 (Mar. 8, 2011)]. To show that this omission amounts to a deprivation of his constitutional rights – as

---

[14] The Court is also not persuaded that the L.A. County Defendants violated Plaintiff's due process rights by holding Plaintiff from 12:22 p.m. on March 9, 2009, when he first entered L.A. County custody, and 8:30 a.m. on March 10, 2009, when he made his first court appearance. As the *Gant* court explained, "[s]o long as the court hearing is prompt…that custodial agency has no independent duty to confirm, before the court does, that the detainee is properly in custody." *Gant*, 2011 WL 1585133 at *22-23. Here, as in *Gant*, there is no question that Plaintiff received a prompt hearing, during which he purportedly complained about his mistaken identity. Further, Plaintiff cites no authority indicating that a custodial agency that briefly holds a detainee while he awaits a court appearance the following day is liable for over-detention in violation of the Fourteenth Amendment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

required to establish municipal liability – Plaintiff must therefore show that the Due Process Clause requires this procedure under *Matthews v. Eldridge*.[15]

As previously stated, *Mathews* requires that the Court consider the risk of error in light of the Plaintiff's interest and the government's interest. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004). Here, application of the *Matthews* balancing test shows that due process does require an agency to update CWS where an individual has been cleared of a warrant upon having been determined to be the wrong person. First, the individual's interest at stake, a potential deprivation of liberty through incarceration, is plainly significant. *See Fairley*, 281 F.3d at 918. Second, while the risk of erroneous deprivation is not great (given that it is relatively uncommon to have the same name, physical attributes *and exact birth date* as another person), the value of this procedural requirement in such instances is substantial. Additionally, the Court finds that the burden on an agency to update CWS records to indicate that an individual has been exonerated on the basis of mistaken identity is slight, given that, among other reasons, such cases are relatively rare. Therefore, balancing these factors as *Mathews* instructs, the Court concludes that the Due Process Clause does require a custodial agency to update a re-issued warrant to include information regarding an individual's exoneration on the basis of mistaken identity.

However, to prevail on a Section 1983 claim against a municipal defendant, a plaintiff must not only show that he was deprived of his constitutional rights by defendants and their employees acting under color of state law, but must also establish that the defendant has "customs or policies which amount to deliberate indifference to ... constitutional rights; and that these policies are the moving force behind the constitutional violations." *Lee*, 250 F.3d at

---

[15] Plaintiff must also show that had the 1989 exoneration been noted or the true suspect's CII number provided on the WIS, the arresting officers would have discovered that he was not the subject of the warrant. *See Gant*, 2011 WL 1585133 at *12. If no error would have been revealed, then Plaintiff cannot show that officials should have known he was entitled to release. Without that showing, he therefore cannot establish that he suffered a deprivation of his Fourteenth Amendment rights. *See Lee*, 250 F.3d at 683. Here, however, it is self-evident that the S.B. deputies who arrested Plaintiff would have realized that Plaintiff was not the true subject of the warrant if the warrant indicated that a person with Plaintiff's CII number (A09162775) was exonerated in 1989 and/or identified the warrant's subject by his CII number (A07928325). Accordingly, the Court need not belabor this point further.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

681–82 (internal quotations and alterations omitted).  Here, Plaintiff fails to present evidence showing that the L.A. County Defendants' failure to update the CWS information field was caused by a policy, custom, or practice of deliberate indifference.  Plaintiff does not dispute that, since 1988, L.A. County has had an express policy of updating CWS to reflect exoneration when an individual is arrested on a CWS and is later determined to be the wrong person.  *Holliday Decl.* ¶¶ 6-10.  Nor has Plaintiff presented any evidence showing that the failure to update CWS was a "custom" or "practice" of the agency.  *See Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) ("[a] single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom.").  Thus, to the extent that Plaintiff asserts an independent Fourteenth Amendment Section 1983 claim against the L.A. County Defendants on this basis, the Court GRANTS summary judgment to L.A. County Defendants on this claim.

        B.  <u>Failure to Independently Verify Plaintiff's Identity</u>

   Plaintiff also contends that LASD officials violated his due process rights by failing to conduct any independent investigation into his complaints of mistaken identity, even though "[Plaintiff's] and the warrant subject's criminal histories were easily accessible, along with their respective fingerprints and CII numbers."  *Opp'n*  6:21:25.  In particular, he asserts that "[v]ia their computer system AJIS, LASD officials could have quickly retrieved computer data on Plaintiff's 1989 incarceration which *probably* would have showed he was exonerated on warrant #091945."  *Id.* at 25:28 (emphasis added).

   In support of these contentions, Plaintiff relies on *Fairley v. Luman*, 281 F.3d 913 (9th Cir. 2002), in which the Ninth Circuit upheld a verdict in favor of a plaintiff who was detained for twelve days on his twin brother's warrant, while the plaintiff and others repeatedly protested that he was not the true subject of the warrant.  *Id.* at 918.  The court concluded that the agency was liable because its procedures for verifying that the warrant matched the detainee in the face of his repeated protests failed the *Mathews* balancing test, *Fairley,* 281 F.3d at 918 & n. 6.

   The Court, however, finds Plaintiff's reliance on *Fairley* misplaced.  In *Fairley*, the city admitted that it knew the plaintiff had a twin brother, and conceded it had the fingerprints of both men which could easily have been compared at any point during the plaintiff's twelve-day detention.  *Id.* at 915.  Here, in contrast, it is undisputed that when S.B. County transferred Plaintiff to L.A. County custody, they did not provide an arrest report, criminal history (for either Plaintiff or the true warrant subject), or the fingerprints of the true warrant subject.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

*Beccera Decl.* ¶¶ 30, 32 [Dkt. # 53 (Mar. 7, 2011)].  To the extent that Plaintiff contends certain other records should have been checked to verify his identity,[16] he has not presented evidence showing that such procedures would have definitively revealed he was not the wanted man, as is required to make out a constitutional claim for violation of due process.  *See Lee,* 250 F.3d at 683.

Additionally, while Plaintiff asserts that "calling up the 1989 AJIS information" would have showed that Plaintiff was incarcerated and exonerated on the warrant in 1989, *Opp'n* 4:24-25, he fails to present evidence to show that L.A. County officials had any way of knowing that he was jailed in L.A. County twenty years earlier.  Although he testified that he complained to two individuals who worked at "the window" in the L.A. County jail, the record indicates that Plaintiff merely told them that the police "were confusing [him] with a person who had run over two people here in Culver City."  *Beccera Decl.,* Ex. F (*Rivera Depo.* 103:8-14) [Dkt. # 53 (Mar. 7, 2011)].  At no point did he inform LASD personnel that he had previously been arrested and cleared on the warrant, let alone that he had been incarcerated in L.A. County jail in 1989.  Accordingly, even if the AJIS data would have definitely revealed that Plaintiff was not the subject of the warrant (which Plaintiff is unable to attest), absent complaints about his previous arrest and incarceration to LASD personnel, L.A. County cannot be said to have violated Plaintiff's due process rights for failing to examine the 1989 AJIS data.  *See Gant,* 2011 WL 1585133 at *16 (concluding that the Due Process Clause does not require custodial agencies to independently verify the identity of non-complaining detainees).

Therefore, for the foregoing reasons, the Court **GRANTS** summary judgment to the L.A. County Defendants on Plaintiff's Fourteenth Amendment Section 1983 claims.

iii.  *San Bernardino County Defendants*

Plaintiff also asserts a Fourteenth Amendment claim against the S.B. County Defendants based on his incarceration at WVDC, claiming that S.B. County officials "knew or should have known that the warrant did not pertain to this plaintiff."  *FAC* ¶ 52.  Specifically, Plaintiff alleges that S.B. officials booked him on the warrant even though they "learned that Plaintiff's

---

[16] Specifically, Plaintiff's claim regarding a comparison of criminal history is discussed below, with respect to the S.B. County Defendants.  This claim fails against the L.A. County Defendants on the same grounds.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

criminal history (a) showed that Plaintiff had never been arrested other than on June 18, 1989, for this same warrant…and that (b) Plaintiff's same criminal history showed he could not be the warrant's subject." *FAC* ¶ 29. However, as explained below, the Court finds that Plaintiff fails to present evidence creating a triable issue of fact as to whether S.B. County violated his rights under the Due Process clause of the Fourteenth Amendment.

To start, the Court notes that that Plaintiff failed to point to circumstances that call into question the constitutionality of his two-day detention at WVDC under *Baker*. Plaintiff was originally arrested pursuant to a valid warrant for an individual who had the same name, exact same birth date, and a similar physical description, *see S.B. Mot.*, Ex. B at 68 (*warrant abstract*) [Dkt. # 57 (Mar. 8, 2011)]. He was held at the WVDC for two days before being transferred to Los Angeles County where, the following morning, he appeared before a court. *Walstrom Decl.* ¶ 11.

The gravamen of Plaintiff's due process claim against S.B. County Defendants, rather, appears to derive from S.B. County's purported failure to perform "readily available" tests which Plaintiff claims would have shown that he was not the true subject of the warrant. *Opp'n* 5:20-6:6. Specifically, he contends that S.B. officials could have "easily retrieved" his CDOJ criminal history, as maintained under his CII number or in S.B. County's jail records, which "would have corroborated [his] claim of the 1989 arrest and exoneration." *Id.* 5:20-22. Similarly, he asserts that S.B. officials could have "easily and quickly identified" the warrant's intended subject by using CLETS for a name/birth date search, then retrieving and comparing the criminal histories for the two different subjects. *Id.* 6:3-6.

To show that these omissions amounted to a constitutional deprivation of due process, Plaintiff must establish that (1) that the Due Process Clause requires these additional procedures under *Mathews v. Eldridge*, and (2) that employing the procedures would have revealed that he was not the Santiago Rivera named in the warrant. If no error would have been revealed through the procedures, then Plaintiff cannot show that officials should have known he was entitled to release. Without that showing, he therefore cannot establish that he suffered a deprivation of his Fourteenth Amendment rights. *See Gant*, 2011 WL 1585133 at *12; *Lee*, 250 F.3d at 683. The Court, however, need not assess whether, under *Matthews*, due process requires officers to perform such searches, because Plaintiff fails to present evidence creating a triable issue of fact as to whether employing these procedures in his case would have revealed that he was not the warrant's true subject.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

S.B. County Defendants assert that even if they had run Plaintiff's criminal history after his arrest on March 7, 2009, a comparison of the warrant abstract and Plaintiff's criminal history would not have definitively ruled out Plaintiff as the subject of the warrant. To this end, they point out that the criminal history contains no warrant number, case number, nor any other notation that would identify the subject warrant charge as the same charge for which Plaintiff had been exonerated in 1989 on grounds that he was the wrong person. *Cook Decl., Ex. C* (*Plaintiff's criminal history*) [Dkt. # 85 (June 8, 2011)]. Similarly, they note that the date of exoneration listed in Plaintiff's criminal history (June 27, 1989) occurs before the date that the warrant upon which Plaintiff was arrested was issued (July 6, 1989). *Thebeau Dec.*, ¶ 4; Ex. B (*warrant abstract*) [Dkt. # 57 (Mar. 8, 2011)].

Further, S.B. County Defendants assert that a comparison of the other subject's criminal history in CLETS would not have conclusively shown that Plaintiff was not the true subject of the warrant. At the time of Plaintiff's March 7, 2009 arrest, the true subject's criminal history would have only showed one count of involuntary manslaughter, and one entry dated April 21, 1985 (the date of the suspect's arrest). *See Cook Decl., Ex. D* [Dkt. # 85 (June 8, 2011)]. This information does not match the charges on the July 6, 1989 warrant on which Plaintiff was arrested (which included various vehicle code violations, as well as a felony manslaughter charge). Plaintiff offers no evidence to refute this. Relatedly, the Court notes that Plaintiff's assertion that fingerprints could be "retrieved in seconds" is not supported by competent evidence. The warrant abstract contained no unique identifiers, and it is undisputed that it actually took days for the court to locate the true suspect's fingerprints, which had been taken twenty-four years earlier.

As Judge Anderson similarly observed in *Alvarado v. Bratton*, No. CV 06-7812 PA, 2009 WL 3963840 (C.D. Cal. Nov. 16, 2009), *aff'd* 2011 U.S. App. LEXIS 11751 (June 9, 2011), it is "quite clear" that, through this litigation, Plaintiff seeks to accomplish a change in SBSD and LASD warrant practices that would essentially require officers to obtain foolproof identifiers before a suspect is detained on an outstanding warrant. However, no case authority requires agencies to behave as Plaintiff desires. Further, in arguing that Defendants' actions/inactions were unreasonable, Plaintiff improperly imports a negligence standard into his claims under Section 1983. *See Daniels v. Williams*, 474 U.S. 327, 334, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986) ("[W]e need not rule out the possibility that there are other constitutional provisions that would be violated by mere lack of care in order to hold, as we do, that such conduct does not implicate the Due Process Clause of the Fourteenth Amendment."); *Maddox v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
| --- | --- | --- | --- |
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

*City of Los Angeles*, 792 F.2d 1408, 1413 (9th Cir. 1986) ("[N]egligent conduct by the state official is not enough to state a claim under section 1983 based on an alleged violation of the fourteenth amendment due process clause.").

Thus, based on the foregoing, the Court **GRANTS** the S.B. County Defendants' summary judgment motion on Plaintiff's Fourteenth Amendment claim.

B.    State Law Claims

Plaintiff also asserts claims against both the L.A. County and S.B. County Defendants for violations of the Bane Act, Cal. Civ. Code § 52.1, as well as for common law false imprisonment. The Bane Act creates a private right of action to sue a person who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California]." Cal. Civ. Code § 52.1(a)- (b). Although governmental entities have *respondeat superior* liability for their employees' Bane Act violations, *see* Cal. Gov't Code § 815.2; *Robinson v. Solano Cnty.,* 278 F.3d 1007, 1016 (9th Cir. 2002), they are immune from liability where the employee would be immune. *See* Cal. Gov't Code § 815.2(b). To succeed on a claim for common law false imprisonment, Plaintiff must establish "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Easton v. Sutter Coast Hosp.,* 80 Cal. App. 4th 485, 95 Cal. Rptr. 2d 316, 323 (2000).

In moving for summary judgment, both sets of defendants contend they are immune from liability on Plaintiff's state law claims pursuant to Cal. Penal Code § 847, which "precludes actions for civil liability against any peace officer for false imprisonment if he was acting within the scope of his authority and the arrest was lawful or if, at the time of the arrest, the officer had reasonable cause to believe the arrest was lawful[,]" *Lopez v. City of Oxnard*, 207 Cal. App. 3d 1, 7, 254 Cal. Rptr. 556 (1989), and under Cal. Civ. Code § 43.55, which "provides immunity to and precludes actions against any peace officer who makes an arrest pursuant to a warrant of arrest regular upon its face if the peace officer in making the arrest acts without malice and in the reasonable belief that the person arrested is the one referred to in the warrant." *Id.* (internal quotations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1861 PSG (DTBx) | Date | July 5, 2011 |
|---|---|---|---|
| Title | Santiago Ibarra Rivera v. County of Los Angeles *et al.* | | |

The Court previously dismissed Plaintiff's state law claims against the L.A. County Defendants on this basis, holding that Plaintiff's allegations could not overcome statutory immunity under Penal Code § 847 and Civil Code § 43.55.  *See* Dkt. # 34 (Aug. 11, 2010).  The result is no different here.  Plaintiff does not contest the validity of the arrest warrant; nor does he present any evidence showing that employees of either municipal entity acted with malice.  Given that he shares the same name, physical description, and exact date of birth with the suspect identified in the arrest warrant, both the S.B. County officials who arrested Plaintiff, and the S.B. and L.A. County officials who detained him reasonably believed that his arrest was lawful.

Further, there is no evidence that any Defendants had any official notice of irregularity or received an order from a court directing plaintiff to be released.  To the contrary, the undisputed evidence shows that L.A. County Defendants were on notice that, because of the gravity of the felony manslaughter charge, Plaintiff was to be held until it was conclusively ascertained that he was not the person named on the warrant.  *RJN,* Ex. 1; *Beccera Decl.,*Ex. H. Although Plaintiff claims he complained to various governmental employees that he was not the true subject of the warrant, he does not dispute that he was unable to produce the judicial clearance form documenting his exoneration.  Accordingly, as Plaintiff has failed to present any evidence suggesting that Defendants' employees lacked reasonable cause to believe Plaintiff's arrest and detention were lawful, the Court concludes that both L.A. County and S.B. County Defendants are statutorily immune and, therefore, entitled to summary judgment on Plaintiff's state law claims.

V.     Conclusion

Based on the foregoing, the Court concludes that the undisputed evidence shows that Defendants did not violate Plaintiff's constitutional, statutory, or common law rights as a matter of law.  Accordingly, the Court **GRANTS** both the L.A. County Defendants' and S.B. County Defendants' motions for summary judgment.

**IT IS SO ORDERED.**